Laurel D. McClellan Kingman County Attorney 349 N. Main P.O. Box 113 Kingman, Kansas 67068
Dear Mr. McClellan:
As Kingman county attorney you request our opinion on the legality of a county employee policy which applies to certain non-elected employees of Kingman county.
The county policy in question states:
 "All employees of Kingman county have the right to vote and discuss politics and are encouraged to do so. No non-elected county employees shall be permitted to actively seek election to an elected county office unless that employee takes an unpaid leave of absence from his/her county employment. Such leave of absence shall be required at the time said non-elected employee files for said office or from the time said non-elected employee announces his/her candidacy or openly campaigns for said office. Said employee may be reinstated to his/her original employment only after the completion of the contested election and only upon the consent of the County Commissioners and the department head of the employee's former department. This provision shall not apply to non-elected employees seeking a county office in which no incumbent is seeking election. `Incumbent' is defined as a person holding an elected county office, whether the office was obtained by election or appointment."
K.S.A. 19-101a and 19-212 allow a county board of commissioners to adopt county policies that do not otherwise violate or conflict with the law. K.S.A. 19-302(c), K.S.A. 19-503(c), K.S.A. 19-805(d), and K.S.A. 19-1202(c) allow the board of county commissioners to adopt general county employee policies applicable to specific county employees. See Attorney General Opinions No. 93-64; 92-160; 91-98; 89-131; and 81-140. The board of county commissioners' authority over personnel policies and persons employed by county officials does not extend to certain employees. See Attorney General Opinion No. 93-64. Thus, we assume that the county policy in question applies only to those county employees who are subject to the personnel policy authority vested in the county commission. Moreover, we note that the rehire procedure of the current policy may exceed the personnel policy power of the board if such decisions are ordinarily vested in another elected official.
You inform us that there are presently two county employees who wish to run for an elected office other than the one in which they are now employed. You ask that we address whether the county policy in question violates any constitutional rights, specifically the rights to due process and freedom of speech. We note that the state has a similar restriction on certain of its employees seeking elective office. K.S.A. 75-3925.
Due process of law is guaranteed under the fifth amendment to the United States constitution: "No person shall . . . be deprived of life, liberty, or property, without due process of law. . . ." Constitutional due process rights attach if a governmental action impacts upon a protected right or interest. Kansas courts have held that the essence of due process is protection against arbitrary government action. Baker v.List and Clark Construction Co., 222 Kan. 127, 134 (1977). The test for whether due process has been afforded is whether the legislation has a real and substantial relation to the objective sought, whether it is reasonable in relation to the subject, and whether it was adopted in the interest of the community. State ex rel Stephan v. Smith, 242 Kan. 336,362 (1987). However, candidacy is not usually considered a fundamental right that requires departure from traditional principles under which state law classifications need only be drawn in such a manner as to bear some rational relationship to a legitimate state end. Clements v.Fashing, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982). Office holding is a political privilege, and the matter of appointment to office is not affected by the fourteenth amendment or other provisions of the federal constitution. Leek v. Theis, 217 Kan. 784 (1975).
 "A general guide was furnished by the Roth court which characterized the type of property interest encompassed within the due process clause as follows: `. . . To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' . . . Kansas law clearly establishes the incumbent to a public office enjoys no property or vested interest in public office." Id. at 811.
It follows that if an incumbent possesses no property or vested interest in his or her office, neither would a prospective candidate for the same position. In Clements the Supreme Court found that the "resign-to-run" provision of the Texas constitution (which required that holders of certain offices automatically resign their positions if they became candidates for any elected office unless the unexpired portion of their current term less than one year) did not violate the United State's constitution and could be upheld. Thus, the government may place some restrictions upon persons who currently work for the government and wish to run for an elected position, if such restrictions reasonably serve a legitimate governmental interest.
Courts have upheld some fairly severe limitations upon political activity by public employees. United States Civil Service Commission v.National Association of Letter Carriers, 413 U.S. 548, 93 S.Ct. 2880,37 L.Ed.2d 796 (1973) is a premier case. In this case, federal employees challenged the validity of the Hatch act, 5 U.S.C.A., § 1501 et seq. This act precludes certain federal employees from engaging in specific political behaviors, including running for elective office. The LetterCarrier court reviewed United Public Workers v. Mitchell, 330 U.S. 75,67 S.Ct. 556, 91 L.Ed. 754 (1947) and found that federal employees can be prevented from seeking a party office, working at the polls, and acting as party paymaster for other party workers. It is now the rule that Congress may:
 "[C]onstitutionally forbid federal employees from engaging in plainly identifiable acts of political management and political campaigning, such as organizing a political party or club; actively participating in fund-raising activities for a partisan candidate or political party; becoming a partisan candidate for, or campaigning for, an elective public office; actively managing the campaign of a partisan candidate for public office; initiating or circulating a partisan nominating petition or soliciting votes for a partisan candidate for public office; or serving as a delegate, alternate, or proxy to a political party convention." Clements, supra at 2885.
Based on the above-cited authorities, we do not believe the county policy in question violates the due process clause.
You also question whether the county policy violates free speech rights. The first amendment to the United States constitution prohibits abridging freedom of speech. An overbroad statute making conduct punishable that is constitutionally protected may be struck down, however, the government may regulate free speech with narrow specificity. City of Wichita v. Huges, 12 Kan. App. 2d 621 (1988). InPickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734,20 L.Ed.2d 811 (1968), the Court held that the government has an interest in regulating the conduct and "the speech of its employees that differ(s) significantly from those it possesses in connection with regulation of the speech of the citizenry in general." See also Rosario v.Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); Dunn v.Blumstein, 405 U.S. 330, 336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972);Bullock v. Carter, 405 U.S. 134, 140 — 141, 92 S.Ct. 849, 854-855,31 L.Ed.2d 92 (1972); Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970,29 L.Ed.2d 554 (1971); Williams v. Rhodes, 393 U.S. 23, 30 — 31,89 S.Ct. 5, 10 — 11, 21 L.Ed.2d 24 (1968).
 "Not all public employee speech is protected. . . . Only that speech which both lies within the general protection of the first amendment (e.g., is not obscene) and is `upon a matter of public concern' may be entitled to that particular protection. . . . Public employee speech not on matters of `public concern' simply enjoys no protection against public employer disciplinary action. . . . As to such speech, the state's interest as public employer in managing its personnel and internal operations is sufficiently weighty that the public employee's first amendment rights in the speech are no greater than would be those of a private employee." Berger v. Battaglia, 779 F.2d 992, 998 (4th Cir. 1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 720
(1986).
Thus, governmental employers may place some restrictions upon employees speech. See also Waters v. Churchill, 511 U.S. ___, 114 S.Ct. 1878,128 L.Ed.2d 686 (1994); Connick v. Myers, 461 U.S. at 147, 148,103 S.Ct. at 1690, 75 L.Ed.2d 708 (1983); Rankin v. McPherson,483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); Eberhardt v.O'Malley, 17 F.3d 1023, 1027 (7th Cir. 1994).
However, there are limits upon a governmental employer's ability to restrict political activities and speech by their employees. A number of jurisdictions have held as unconstitutionally overbroad provisions which restrict nonpartisan as well as partisan political activity. See
51 A.L.R. 4th 702, 741 (1987). See also Morial v. Judiciary Comm'n ofState of Louisiana, 565 F.2d 295, 303 n. 8 (C.A.5 La. 1977), cert.denied, 435 U.S. 1013, 98 S.Ct. 1887, 56 L.Ed.2d 395 (1978). However, restrictions on nonpartisan political activity of designated public employees may be upheld, provided a significant governmental interest is served by the restrictions. See Magill v. Lynch, 560 F.2d 22 (1st Cir. 1977), cert. denied, 434 U.S. 1063, 98 S.Ct. 1236, 55 L.Ed.2d 763 (1978) (fire fighters of city barred from nonpartisan candidacy for city office; "nonpartisan" elections still had strong partisan overtones, and the prohibition helped to prevent political oppression of public employees and situations in which subordinate city employee runs against employee's supervisor). The fifth circuit court of appeals found that provisions of a municipal charter prohibiting city employees from circulating petitions or soliciting contributions for city council candidates was not rendered unconstitutional in violation of the city employees' first amendment rights merely because the elections were structured as nonpartisan. Waschman v. City of Dallas, 704 F.2d 160 (5th Cir. 1983). Thus, while government employers may legally restrict certain political activities by their employees, such restrictions are more likely to be upheld as constitutional if they apply to partisan races and if the policies are narrowly drawn to address a legitimate interest.
The Kingman county policy in question does not prohibit employees from discussing politics. In fact, it encourages interest in such matters. Rather, the policy requires that county employees who wish to run for a contested county office conduct their political campaigns while in the private sector. This county restriction appears to only apply if an employee chooses to run in a partisan race. Thus we do not believe it unconstitutionally deprives county employees of their free speech rights.
The county resolution in question does not prohibit Kingman county employees from speaking about political matters or running for elective office. Rather, the policy in question requires that such employee candidates take an unpaid leave of absence. The employee may be reinstated when the election is over. The policy is inapplicable if the election in question does not involve an incumbent. Current office holders are not subject to this policy, (perhaps because county board of commissioners' lack of personnel policy authority over the person of another elected county officer). You do not state what purpose the policy in question seeks to promote or what community good is furthered by these restrictions. However, it is not difficult to articulate the possible intent of the county.
We believe this personnel policy may be defensible if it promotes a legitimate public interest in as narrow a manner as possible. The federal Hatch act requires that certain federal employees either refrain from running for elective office or resign from employment. Likewise K.S.A. 75-3925 imposes a similar requirement upon specific Kansas state employees.
Thus, in keeping with case law concerning similar types of restrictions by other governmental employers, it is our opinion that the county policy in question does not violate county employees' due process or free speech rights. A county may adopt a general employee policy that applies to certain non-elected employees of a county and requires that they take an unpaid leave of absence during the time they are a candidate running for county office. Such a policy can only be imposed upon those employees subject to the personnel policy authority of a county board of commissioners, should be as narrowly drawn as possible and must rationally promote a legitimate government interest.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:jm